# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| *versus* | : | CRIMINAL NO. |
| | : | |
| GERNESIA WILLIAMS | : | |

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and Gernesia Williams ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

### A. THE DEFENDANT'S OBLIGATIONS

#### 1. Guilty Plea

The defendant agrees to enter a plea of guilty to a Bill of Information charging her with Knowing Conversion of Government Funds in violation of 18 U.S.C. § 641.

#### 2. Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to her by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court. Further, the defendant agrees to provide the United States with any information or documentation in her possession regarding her financial affairs and to submit to a debtor's examination upon request. Any financial information provided by the defendant may be used by the United States to collect any financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

3. **Waiver of Indictment**

The defendant agrees to waive indictment in open court at arraignment.

B. **UNITED STATES' OBLIGATIONS**

1. **Non-prosecution of Charges**

The United States agrees that, if the Court accepts the defendant's guilty plea, it will not prosecute the defendant, in this district, for any offense related to the offense charged in the Bill of Information or for any other offense discovered during the investigation into the offense that forms the basis of the Bill of Information.

2. **Motion for Third Point for Acceptance of Responsibility**

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level. The United States reserves the right to object to a decrease in offense level for acceptance of responsibility based on information received by the United States after the effective date of this agreement, including information that the defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

C.  **SENTENCING**

1.  **Maximum Statutory Penalties**

The maximum possible penalty is a term of imprisonment of 10 years, a fine of up to $250,000, and a term of supervised release of three years.

In addition to the above, the Court must impose a special assessment of $100 which is due at the time of sentencing. The Court may also order restitution.

2.  **Supervised Release**

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

3.  **Sentencing Guidelines**

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court. The Court could impose any sentence up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

4. **Agreement Regarding Loss and Restitution**

The United States and the defendant agree and stipulate that, though not binding on the Court or the United States Probation Office, they will jointly recommend that the Court find, for purposes of Section 2B1.1(b)(1) of the Sentencing Guidelines, that the amount of loss caused by the defendant as a result of the offense of conviction was $109,383.20.

The United States and the defendant further agree, pursuant to 18 U.S.C. § 3663(a)(3), that the Court shall not be limited to the count of conviction for purposes of ordering restitution. As a condition of this plea agreement, the defendant agrees that the Court will order full restitution to the victim in an amount to be determined by the Court based on defendant's conduct.

5. **No Further Agreement Regarding Sentencing**

Except as set forth in this agreement and the supplement to the plea agreement, the United States makes no promises, representations, or agreements regarding sentencing. In particular, the United States reserves the right to present any evidence and information, and to make any argument, to the Court and the United States Probation Office regarding sentencing.

6. **Forfeiture**

The defendant agrees to forfeit any property constituting, or derived from, proceeds that are traceable to, directly or indirectly, the offense charged in the Bill of Information, with the following exception: the United States agrees that it will not seek to forfeit the real property located at 3211 Hollywood Street, Baton Rouge, Louisiana, 70805, and 3027 Winbourne Avenue, Baton Rouge, Louisiana, 70805.

The defendant admits that the amount of the proceeds derived from the offense was $109,383.20. She therefore agrees to forfeit to the United States a sum of money equal to $109,383.20 in United States currency and consents to entry of a personal money judgment against her in such amount.

The defendant admits that the property identified in the Notice of Forfeiture in the Bill of Information constitutes or is derived from proceeds traceable to the offense. She therefore agrees to forfeit her interest in such property and consents to the entry of orders of forfeiture for such property.

The defendant understands that forfeiture of her property will not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon her as part of her sentence. The defendant further understands that, separate and apart from her sentence in this case, the United States may also institute civil or administrative forfeiture proceedings of any property, real or personal, which is subject to forfeiture. The defendant agrees to waive her interest in the property identified in the Notice of Forfeiture in the Bill of Information in any such civil or administrative forfeiture proceeding.

The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets and to fully and completely assist the United States in the recovery and forfeiture of all forfeitable assets, including taking all steps as requested by the United States to pass clear title to forfeitable assets to the United States. The defendant agrees to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders.

The defendant hereby waives the following: (1) all statutory and constitutional defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R. Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and determine that the defendant understands, the applicable forfeiture prior to accepting the defendant's plea.

## D. FACTUAL BASIS

The United States and the defendant stipulate to the following facts:

From in or around April 2020, and continuing through at least in or around January 2023, in the Middle District of Louisiana and elsewhere, Gernesia Williams, defendant herein, as part of a single continuing scheme involving Economic Injury Disaster Loan ("EIDL") funds administered by the United States Small Business Administration ("SBA"), did knowingly convert to her own use, United States government funds in excess of $1,000, with the intent to deprive the SBA of the use or benefit of the funds and to use the funds for an unauthorized purpose.

At all times relevant, the SBA was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses, among other ways, by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA administered loans with government-backed guarantees, including through the disaster-related EIDL program. In or around March 2020, in response to the COVID-19 pandemic, the EIDL Program was expanded through the federal Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The EIDL Program offered economic relief to eligible small businesses that were experiencing substantial financial disruption as a result of the COVID-19 pandemic. Through the EIDL Program, the CARES Act authorized the SBA to provide working capital in the form of low interest, long-term loans.

On April 7, 2020, the defendant electronically submitted an EIDL Program application to the SBA in her own name, asserting that her business was a single-employee sole proprietorship that sold personal services. Based on that application, on or about June 14, 2020, the defendant signed a Loan Authorization and Agreement in which she certified, among other

representations, that all EIDL funds would be used solely as working capital to alleviate economic injury caused by the COVID-19 pandemic. In connection with later loan modifications, she certified that none of the EIDL funds would be used primarily for personal, family, or household purposes. Under the terms of the approved Note, the defendant caused the SBA, initially, to deposit $13,800 into her back account on or about June 16, 2020.

Also on April 7, 2020, the same day the defendant submitted the EIDL Program application in her own name, she electronically submitted another EIDL Program application to the SBA in the name of Rosebud Investment LLC, claiming that her mother was the sole owner of the business. On June 15, 2020, the defendant submitted a Loan Authorization and Agreement in which she certified, among other representations, that all EIDL funds would be used solely as working capital to alleviate economic injury caused by the COVID-19 pandemic. Under the terms of the approved Note, the defendant caused the SBA, on or about July 7, 2020, to deposit $30,500 into a bank account that she controlled.

On September 2, 2020, the defendant registered with the Louisiana Secretary of State a limited liability company called Dreamlife Solutions, LLC ("Dreamlife"). The defendant was and is the sole officer and registered agent for Dreamlife, a housing and personal services business that provides lodging, meals, basic medical care, and transportation to medical appointments for elderly and/or disabled clients.

On October 28, 2020, the defendant electronically submitted an additional EIDL Program application to the SBA in the name of Dreamlife. The SBA did not approve this application.

On December 30, 2021, the defendant requested that the SBA increase the amount of the EIDL program loan she received in her own name. Based on the defendant's representations, the SBA approved the request and ultimately authorized several loan modifications. Between February 8, 2022, and April 12, 2022, the defendant signed several Amended Loan Authorization and Agreements, in which she falsely certified, among other representations, that all EIDL funds would be used solely as working capital to alleviate economic injury caused by the COVID-19 pandemic and that none of the EIDL funds would be used primarily for personal, family, or household purposes. During that same time period, the defendant caused the SBA to deposit an additional $360,400 into her bank account. Therefore, not counting the receipt of a $1,000 advance that did not need to be repaid, the defendant caused the SBA to deposit into her bank account approximately $374,200 in EIDL funds associated with the application in her own name.

In summary, counting the EIDL funds that the defendant received both in her own name and that of Rosebud, she caused the SBA to deposit $404,700 of EIDL funds into bank accounts that she controlled. Of this amount, the United States and the defendant agree that the defendant knowingly converted to her own use, between June 2020 and January 2023, all $30,500 of the Rosebud EIDL funds, and the following EIDL funds she received in her own name: $33,500 for jewelry; $21,666.71 for non-Amazon.com wedding expenses; $13,972.62 for miscellaneous personal purchases on Amazon.com, including additional wedding expenses and beauty supplies; $4,490.93 for clothing, shoes, and other accessories; $2,509.44 for reinstatement fees to the Louisiana Department of Public Safety & Corrections; $2,055.74 for DoorDash food delivery services; $687.76 for other miscellaneous personal care expenses; and $647.27 for various entertainment expenses.

During the same approximate time period, the defendant spent a substantial portion of the SBA EIDL funds on expenses related to Dreamlife, including for employee payroll and to purchase, renovate, furnish, clean, and operate two housing locations, one at 3211 Hollywood Street, and the other at 3027 Winbourne Avenue, both in Baton Rouge, Louisiana.

Accordingly, the United States and the defendant stipulate that, for the purposes of Section 2B1.1(b)(1) of the United States Sentencing Guidelines, the amount of actual loss caused by the defendant through the aforementioned conduct is $109,383.20, and that the Court may order restitution in that amount. As of June 2024, the defendant has paid $3,915 to the SBA toward the balance remaining due on her EIDL notes and accumulated interest.

The defendant admits that, to the best of her knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the defendant further agree that such facts are sufficient to support conviction of the offense to which the defendant has agreed to plead guilty. The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of sentencing. Rather, in determining the factual basis for the sentence, the Court will consider

the stipulation, together with the results of the presentence investigation and any other relevant information.

## E. BREACH AND ITS CONSEQUENCES

### 1. Conduct Constituting Breach

Any of the following actions by the defendant constitutes a material breach of this agreement:

    a.    failing to plead guilty to the Bill of Information at arraignment;

    b.    representing, directly or through counsel, to the United States or the Court that she will not plead guilty to the Bill of Information;

    c.    moving to withdraw her guilty plea;

    d.    filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

    e.    disputing or denying guilt of the offense to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

    f.    failing or refusing to waive indictment in open court at arraignment;

    g.    providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

    h.    violating the terms of this agreement or the supplement to the plea agreement in any other manner.

### 2. Consequences of Breach

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement and the supplement to the plea agreement. In particular, the United States may prosecute the defendant for any criminal offense. In addition, any statements and

information provided by the defendant pursuant to this agreement (or the supplement to the plea agreement) or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation. Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), the supplement to the plea agreement, statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty plea), and statements made in the course of plea discussions. The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by her personally (but not as to statements made by her counsel). The defendant is not entitled to withdraw her guilty plea.

3. **Procedure for Establishing Breach**

The United States will provide written notice to the defendant or her attorney if it intends to be relieved of its obligations under the agreement and the supplement to the plea agreement as a result of a breach by the defendant. After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach. However, the United States will obtain a judicial determination regarding breach prior to using statements and information provided by the defendant or any act of producing documents or items by the defendant pursuant to this agreement or the supplement to the plea agreement, or any evidence or information derived therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case.

The standard of proof in any proceeding to determine whether the plea agreement or the supplement to the plea agreement has been breached is preponderance of the evidence. To prove a breach, the United States may use (1) any and all statements of the defendant, (2) any and all statements of her counsel to the Court (including the United States Probation Office), and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

F.  **WAIVERS BY THE DEFENDANT**

   1.  **Waiver of Trial Rights**

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial. At a trial, the defendant would have the trial rights to be represented by counsel (and if necessary have the Court appoint counsel), to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a reasonable doubt. By waiving her right to a trial and pleading guilty, the defendant is waiving these trial rights.

   2.  **Waiver of Appeal and Collateral Remedies**

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal her conviction and sentence, including any appeal right conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2). This waiver applies to any challenge on appeal or in any post-

conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation. The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; (b) any sentence which is an upward departure pursuant to the Sentencing Guidelines; (c) any sentence in which the loss amount as calculated pursuant to the Sentencing Guidelines is more than $150,000, and (d) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court. Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

3. **<u>Waiver of Statute of Limitations</u>**

The defendant hereby waives all defenses based on the applicable statutes of limitation as to the offense charged in the Bill of Information and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement. The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement. The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

4. **Waiver of Speedy Trial Rights**

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to the offense charged in the Bill of Information. The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

G.  **EFFECT OF AGREEMENT**

1. **Effective Date**

This agreement and the supplement to the plea agreement are not binding on any party until both are signed by the defendant, defendant's counsel, and an attorney for the United States. Once signed by the defendant, her counsel, and an attorney for the United States, the agreement and the supplement are binding on the defendant and the United States.

2. **Effect on Other Agreements**

This agreement incorporates the supplement to the plea agreement which will be filed under seal with the Court. In this district, the Court requires that a sealed supplement be filed with every plea agreement regardless of whether the defendant is cooperating. The supplement either states that the defendant is not cooperating or provides the terms of the defendant's agreement to cooperate. This plea agreement, along with the aforementioned supplement to the plea agreement, supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

3. **Effect on Other Authorities**

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

4. **Effect of Rejection by Court**

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement and the supplement to the plea agreement. If the Court rejects the plea agreement and the supplement, the plea agreement and the supplement are no longer binding on the parties and are not binding on the Court. If the Court rejects the plea agreement and the supplement, the defendant will be given the opportunity to withdraw her plea and such withdrawal will not constitute a breach of the agreement. If the defendant does not withdraw her plea following rejection of the plea agreement and the supplement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

H. **REPRESENTATIONS AND SIGNATURES**

1. **By The Defendant**

I, Gernesia Williams, have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not been threatened, intimidated, pressured, or coerced in any manner. I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement and the supplement to the plea agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be. I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Bill of Information and discussed it with my attorney. I fully understand the nature of the charge, including the elements. I understand that I am entitled, under the Fifth Amendment of the United States Constitution, to have the charge instituted by a Grand Jury Indictment.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of the offense charged in the Bill of Information .

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

_____     DATE: 9-3-24
Gernesia Williams
Defendant

2. **By Defense Counsel**

I have read the Bill of Information and this plea agreement and have discussed both with my client, Gernesia Williams, who is the defendant in this matter. I am satisfied that the defendant understands the agreement and the charge against her, including the elements. I am also satisfied that the defendant is entering into the agreement knowingly and voluntarily. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____  DATE: 9-3-24
J. Christopher Dippel, Jr.
Counsel for Defendant

3. **By the United States**

We accept and agree to this plea agreement on behalf of the United States. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____  DATE: 8-28-24
Ronald C. Gathe, Jr.
United States Attorney
Middle District of Louisiana

_____  DATE: 8.28.24
Ben Wallace
Assistant United States Attorney
Middle District of Louisiana